IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RODNEY MUCKLEROY, #0467 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv150 |
| QUADE DAVIS, et al. | § | |

<u>REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Rodney Muckleroy, an inmate confined within the Bowie County Correctional Facility, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights occurring at the Panola County Jail. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The present Report concerns Defendants' motions for summary judgment, (Dkt. ## 26, 27), concerning the exhaustion of administrative remedies and Defendants' motions for summary judgment, (Dkt. ## 29, 32), on the merits. For reasons explained below, the Court recommends that the motions be granted and that this lawsuit be dismissed.

**I. Muckleroy's Amended Complaint**

Muckleroy's amended complaint, (Dkt. #8), is the operative pleading in this case. An amended complaint entirely supersedes and takes the place of the original complaint. *See Clark v. Tarrant Cnty.*, 798 F.2d 736 (5th Cir. 1986). He explains that on March 4, 2022, he "had been hit" by a truck and hurt his shoulder. Muckleroy notes that he was arrested shortly afterwards by Defendant Quade Davis and requested that he go to the emergency room for his shoulder but was denied and taken to the jail instead.

On March 3, 2022, Muckleroy asserts, Defendant Nurse Derman charged him a $10.00 co-payment "to see her when [he] had asked to see the PA Robert Eastwood," (Dkt. #8, pg. 4). Derman denied his request. An X-ray was completed and "the nurse said it was a chronic illness [and] it would never heal." *Id*. He states that he has "never seen the PA in person." *Id*. Muckleroy further asserts that, per a sergeant, "the PA denied to see [him]" on April 18, 2022. Defendant Fields, Sheriff" is aware of everything that goes on—and allowed him "to be denied." *Id*. He seeks an investigation, for his medical issues to be handled properly, and for compensation.

**II. Motions for Summary Judgment**

Across all motions, Defendants seek summary judgment and a dismissal. Defendants first argue, (Dkt. ## 26, 27), that Muckleroy failed to exhaust his required administrative remedies for his claims while housed at the Panola County Jail before he filed his lawsuit. Defendants attach numerous exhibits demonstrating that Muckleroy submitted jail grievances, but do not explain specifically how Muckleroy failed to exhaust.

Defendants further argue that they did not act with deliberate indifference to Muckleroy's serious medical needs, as mere disagreement with medical care is insufficient. They also contend that his dissatisfaction with a small copay for medications and sick-calls is without merit and fails to state a claim upon which relief may be granted. Muckleroy did not respond to Defendants' motions.

**III. Summary Judgment Evidence**

Defendants submitted (1) the Panola County Jail's Grievance Plan, (2) Muckleroy's jail grievances, (3) Declaration of Jail Lieutenant McMullen, (4) Muckleroy's relevant medical records, (5) Affidavit of Robert Eastwood, (6) Affidavit of Donna Dearman, LVN, and (7) Declaration of Quade Davis. Muckleroy attached a single jail grievance, (Dkt. #8), to his amended

2

complaint that is also contained in Defendants' summary judgment evidence. Because Muckleroy has not responded to the motions for summary judgment, the evidence is therefore uncontroverted.

### 1. Panola County Jail Grievance Plan

The summary judgment includes the Jail's Grievance Plan, (Dkt. #26, pg. 11). The Plan notes that "the objective of the Grievance Plan is to provide inmates an opportunity and procedure to file a grievance while confined in the Panola County Detention Center." *Id*. Jail officials are to inform inmates of the availability of the procedure in the Inmate Rules and Regulations that are provided to each inmate when admitted. *Id*. Inmates may handwrite grievances—or they are permitted to use the Jail's kiosk system. *Id*. at pg. 15. The evidence further provides that:

> Upon entry into the Panola County Jail, each inmate is told that if they desire to file a grievance th[ey] will use the Panola County Jail's kiosk system. Each inmate's cell has an electronic kiosk in it that they have access to 24-hours a day/7 days a week. Inmates use the kiosk to communicate in a variety of ways. This kiosk can be used for making video clips, text messages, to make sick calls, and to file a grievance. Upon entry into the Panola County Jail, each inmate must electronically "accept" that they have read the Grievance Plan and that they understand how to use the Grievance Plan. In an inmate does not enter "accept" an inmate cannot use the kiosk for any purpose.
>
> Inmate requests and grievances are done online on the kiosk. When an inmate makes a request or grievance message is sent to a Panola County Jail employee who is the designated Grievance Officer. The Grievance Officer will then respond to the grievance or request and then request that the inmate acknowledge electronically the Grievance Officer's response.

*Id*. at pg. 15. According to the Plan, the Grievance Officer is the Chief Deputy. The Sheriff is the final appeal authority "and should not be on the Grievance Review Board." *Id*. at pg. 11. Upon receipt of a grievance, the Grievance Officer reviews the grievance—and if the grievance is not an emergency, the "Grievance Officer will investigate fully the grievance allegations." *Id*. The Grievance Officer shall submit a response to the inmate, including findings and action taken, as soon as possible but not to exceed fifteen days. *Id*.

If an inmate is dissatisfied with a response—or disputes the findings and actions taken—the inmate "may request a hearing before the Grievance Review Board," which is comprised of the Chief of Criminal Investigation Division and Administrative Assistant/Certified Peace Officer, (Dkt. #26, pg. 12). The Review Board, upon receipt of a grievance hearing request, shall respond within fifteen days. If an inmate then disputes the decision by the Review Board, "the inmate may appeal to the Sheriff." The Sheriff's decision is final. *Id*.

    2. Muckleroy's Relevant Grievances

While the evidence shows that Muckleroy submitted several grievances through the Jail's kiosk system, only two grievances are related to his medical care and shoulder. Muckleroy submitted grievance number TK-Mz9ArOsmDXPB on April 13, 2022. *Id*. He wrote the following:

> I am writing this grievance regarding medical. I put in a request to see the Doctor on 03/27/2022 and the Nurse took matters into her own hands and charged me $10 to see her when I needed to be seen by the Doctor regarding my left shoulder being out of place per the x[-]ray and the Nurse. At this point I would like to have a 2nd opinion from a 3rd party Doctor and Im being denied the proper medical attention, so my shoulder can be put back in place and reset so it can be properly healed right. The nurse wants to place me on medication for the rest of my life when she knows I have a bad liver. They almost gave me the wrong meds one time. I fear for my health here at Panola County Jail.

Dkt. #26, pg. 19. Sergeant Martinez responded to the grievance the following morning, explaining that "[m]edical had an x-ray done per the doctors orders, the doctor viewed the x-ray. Medical told you what the findings of the x-ray were. There is no 3rd party doctor. You have discontinued the meds the doctor had you put on and refused to continue to take them. Please respond to this grievance with your initials indicating you received an answer." *Id*. at pg. 20.

Muckleroy responded to Sergeant Martinez on the same day, April 14, 2022, by asserting that he "was almost given the wrong meds, so [he] don't take meds from people who are not qualified to pass them." *Id*. He further stated that he has a "bad liver," so he cannot take a lot of pills—and that his blood was not drawn for testing to see if the medication would work. *Id*.

4

Defendant McMullen responded on April 18, 2022, by asking Muckleroy to "please initial," to which he complied. *Id*. at pg. 19. The grievance was then closed.

On April 18, 2022, Muckleroy submitted another grievance, grievance number TK-b1KeDNIEGCjb. He submitted the following through the Jail's kiosk system:

> Since you guys do not have a Step 2 in place here in Panola Jail. I will try to get through to you once more. First I have not seen a doctor in person here in the panola county jail. Although I requested to see him the nurse is stopping all of that for whatever reason the meds I stop taking because of pass [sic] liver problems. Also I was almost given the wrong meds by a panola county jailer but the fact remains my shoulder is dislocated and needs to be reset so that it may heal. [T]he nurse is telling the PA that he does not have to see inmates in person then has him sign off on what she think should be done there for saving panola money at the inmates [expense] this is wrong and should be investigated by the proper authority.

Dkt. #26, pg. 25. Before receiving a response, Muckleroy requested a copy of all his grievances and stated, "this is the response to 04/13/22 grievance." *Id*. at pg. 26. The same day, Sergeant Martinez responded to this grievance as follows:

> The doctor has reviewed your X-ray and medical has told you the findings of said X-ray. It is up to the doctor whether he wants to see you not the nurse. When the PA comes he reviews all files and it is his decision on who he sees. Please respond to this grievance with your initials.

*Id*. Sergeant Martinez asked Muckleroy to place his initials in a response indicating that he received this response on April 20, 2022, to which Muckleroy complied. *Id*. at pg. 25. The grievance was then closed.

### 3. Muckleroy's Medical Records

The summary judgment evidence reflects that Muckleroy was booked into the Panola County Jail on March 5, 2022, (Dkt. #29, pg. 14). His screening intake records show that he did not complain about a serious injury or hospitalization within the last ninety days. *Id*. The official remarked that Muckleroy appeared to be under the influence of alcohol or drugs—specifically

noting "acting sporadically + seeing things." *Id*. The records illustrate that he "stopped answering questions" and was then placed on suicide watch.

During a subsequent screening, after the first failed, Muckleroy stated that he could not remember whether he was taking any prescription medications and denied any disabilities or chronic illnesses, (Dkt. #29, pg. 15). He remarked that he has a history of cocaine and alcohol abuse—and believed he would suffer from withdrawal symptoms from stopping use of medications or other substances. *Id*. Because Muckleroy was unable to focus during this second medical screening, the official remarked that he "seems to be still intoxicated." *Id*.

The third screening proved successful. Muckleroy explained that he had no serious injuries or hospitalizations over the last ninety days and was currently prescribed stomach medications. He reiterated his history of drug/alcohol—but this time stated that he did not believe he would suffer withdrawal symptoms. As Defendants indicate, Muckleroy did not report any injuries to his shoulders, legs, or stomach.

Muckleroy refused his lunch tray on March 7, 2022. *Id*. at pg. 21. He told a jail official that he was not going to eat until "he gets to see a Dr," further stating that his upper left arm around his shoulder was probably broken. *Id*. Before he arrived, Muckleroy asserted, he had blood in his stools and was peeing blood. Defendant Dearman, LVN, told him that if he refused to eat, she would have to place him on suicide watch for refusing to eat—to which Muckleroy responded, "you do what you have to do." *Id*. However, Muckleroy "stayed on his mat + refused to answer or look at" her. *Id*. The notes indicate that he accepted and ate his evening meal.

On March 8, 2022, Muckleroy submitted a sick-call slip at the Jail, (Dkt. #29, pg. 17). He complained about a possible broken arm along with cuts and scratches all over his body. When prompted with how long he had been experiencing this problem, Muckleroy remarked "some days

6

ago." *Id*. The evidence further shows that Muckleroy arrived at the medical department where Defendant Dearman evaluated and treated him. She cleaned his knees, which had "scabbed over." *Id*. When Muckleroy complained about his left shoulder/arm, she noted "could feel a knot like muscle tissue knotted up on side of his shoulder (deltoid)," (Dkt. #29, pg. 21). She discussed an X-ray with him—and provided him with two Tylenols for pain as well as BioFreeze. The original sick-call request includes a notation that "X-ray order." *Id*. at pg. 17.

The results of the X-ray of his left shoulder were available the same day, March 8, 2022. *Id*. at pg. 22. Defendant Eastwood, P.A., ordered the X-ray and D.O. Brian Boldt interpreted the results—which revealed that "there is moderate glenohumeral degeneration. Irregularity of the inferior glenoid may be secondary to chronic fracture/bony Bankart lesion. Otherwise no acute fracture identified. There is mild AC arthropathy. Mineralization is within normal limits." *Id*.

On March 21, 2022, Muckleroy submitted a sick-call request through the Jail's electronic kiosk stating that he "would like to be put on the doctors sick call to see about getting back on my [psych] medicine." *Id*. at pg. 23. He also wrote that he "would like to see the doctor not the nurse." *Id*. The record shows that Dearman responded that she "will put him on the Dr.'s list. As long as you know what you were taking so he will know." *Id*.

The record shows that Muckleroy saw the nurse on the same day. Muckleroy explained that he wanted to be placed on medications that he took while in the Tarrant County Jail, at which point Dearman faxed the jail for the medical records. *Id*. at pg. 24. Records further indicate that while Dearman saw Muckleroy in medical, they discussed his shoulder at length and Dearman would "put his chart for the PA to see him on Friday." Dearman remarked that "[m]ade no promises that PA would see him," and that Muckleroy "wants something for the pain."

Dearman received Muckleroy's records from the Tarrant County Jail on March 22, 2022, (Dkt. #29, pg. 24). The physician then ordered his verified medication. Dearman also gave him a three ounce bottle of BioFreeze, but warned him that the next bottle would not be at no charge. She also provided him with instant heat packs, at which point Muckleroy requested to see the PA "when he comes in on Friday." *Id*. The records show that Dearman explained to him that the "PA may not see him if he feels he doesn't need to after looking at the X-rays." *Id*.

On March 25, 2022, the provider ordered Muckleroy pain medication, Meloxicam. *Id*. at pg. 26. The order was cancelled, however, on March 30, 2022, because Muckleroy refused to take it and stating that "it aint working." *Id*. Dearman also cancelled another medication per Muckleroy's request. He remarked that he wanted to "discontinue the pills." *Id*. at pg. 24. The summary judgment evidence includes two documented refusals for Meloxicam dated March 30, 2022, and May 13, 2022. *Id*. at pg. 29-30.

**IV. Legal Standards**

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

The United States Court of Appeals for the Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to

different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

**V. Discussion and Analysis**

A review of the summary judgment evidence, viewed in the light most favorable to Muckleroy, demonstrates that the evidence before the Court could not lead to different factual findings and conclusions. In other words, summary judgment in favor of Defendants is appropriate in this case.

A. Exhaustion of Administrative Remedies

It is well-settled that prisoners must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purpose, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90-91. The Fifth Circuit recently reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The United States Supreme Court elaborated further about the exhaustion requirement in *Jones v. Bock*, 549 U.S. 199 (2007). It was noted that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. In light of *Jones v. Bock*, the Fifth Circuit provided guidance concerning how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following procedures were outlined:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73.

Here, the undisputed summary judgment evidence illustrates that Muckleroy failed to exhaustion his required administrative remedies to completion at the Panola County Jail before filing this lawsuit. Specifically, the evidence shows that Muckleroy failed to file appeals.

10

The Panola County Jail's Grievance Plan and the undisputed evidence before the Court show that the Jail provides that grievances may be submitted as written or through the electronic Jail kiosk. The Jail had a three-step grievance process—first, the grievance is forwarded to the Grievance Officer for review. If the inmate is dissatisfied with the Grievance Officer's response, second, he may then request a hearing before the Grievance Review Board, (Dkt. #19, pg. 12-13). Upon receipt of the request for a hearing, the Board convenes for a hearing and to respond in writing to the inmate's request. If the inmate remains dissatisfied and disputes the decision made by the Board, the inmate may appeal to the Sheriff. The Sheriff will then review both the decisions of the Grievance Officer and the Board, and notifies the inmate of the decision within fifteen days. The Sheriff's decision is final. In other words, the third step—an appeal to the Sheriff—is the final step. The first step of the Jail's grievance procedure reads as follows, in pertinent part:

> III. The Grievance Officer will be the Chief Deputy. The Sheriff is the final appeal authority and should not be on the Grievance Review Board. Upon receipt of the grievance, the Grievance Officer will review the grievance to determine if the grievance is an emergency (where delay could subject the inmate to personal injury or other damages). The following constitutes a grievance:
>
> A- A civil rights violation;
> B- A criminal act;
> C- Unjust denial or restriction of inmate privileges;
> D- A prohibited act by a staff member.

(Dkt. #29, pg. 11). The next step, an inmate request to the Grievance Review Board, reads as follows:

> IX. An inmate may request a hearing before the Grievance Review Board if findings and action taken by the Grievance Officer is disputed. The Grievance Review Board will be comprised of Chief of Criminal Investigation Division and Administrative Assistant/Certified Peace Officer.
>
> X. Upon receipt of the grievance hearing request, the Grievance Review Board will convene as soon as possible, but not to exceed fifteen (15) days, for a hearing and respond in writing to the inmate's request.

11

*Id*. at pg. 12. Finally, inmates are instructed to appeal to the Sheriff if he remains dissatisfied:

> XI. If the decision made by the Grievance Officer or the Grievance Review Board is disputed by the inmate, the inmate may appeal to the Sheriff. Upon receipt of an appeal request, the Sheriff will review the findings and actions taken by the Grievance Officer and the Grievance Review Board. The Sheriff will notify the inmate in writing of his decision as soon as possible, but not to exceed fifteen (15) days. The Sheriff's decision will be final.

*Id*. Accordingly, the summary judgment evidence reveals a three-step grievance procedure within the Panola County Jail.

Muckleroy, here, failed to follow these procedures to completion. The summary judgment evidence contains numerous grievances—but is devoid of subsequent requests for a hearing by the Board or an appeal to the Sheriff. The evidence confirms Defendants' contention: No evidence exists indicating that Muckleroy requested a hearing and submitted an appeal to the Sheriff for any of his Jail grievances prior to filing this lawsuit. He, as a result, failed to comply with the multi-step procedure within the Jail—and he therefore failed to exhaust his administrative remedies to completion.

With respect to his claim that Defendant Davis failed to take him to the emergency room instead of the Jail, the Court notes that inmates must exhaust administrative remedies that are available. When the relevant administrative procedure lacks the authority or ability to provide relief or to take any action whatsoever in response to the grievance, administrative remedies are unavailable—thereby rendering the exhaustion requirement futile. *See Huskey v. Jones,* 45 F.4th 827, 831 (5th Cir. 2022); *Allard v. Anderson*, 260 F. App'x 711, 715 (5th Cir. 2007) (unpublished). The Supreme Court has held that a prisoner is required to exhaust "only those[] grievances that are 'capable of use' to obtain some relief for the action complained of.'" *See Ross v. Blake*, 578 U.S. 632, 642 (2016).

12

Defendant Davis does not explain what remedy Muckleroy had for his complaint that Davis failed to take him to the emergency room instead of jail. One could argue that the Jail's grievance procedure does not provide a remedy for the failure to transport him to the hospital; accordingly, Muckleroy's claims against Davis are arguably exhausted. The Court need not decide this issue, as all of his claims fail on the merits.

### B. Deliberate Indifference to Serious Medical Needs

Even if Muckleroy had exhausted his administrative remedies to completion, his claims fail on the merits and Defendants' motions for summary judgment, (Dkt. ## 29, 32), should be granted. The Court understands that Muckleroy claims that Defendants acted with deliberate indifference to his serious medical needs through complains about his left shoulder/arm. Specifically, Muckleroy claims that Defendants failed to take him to the hospital when asked, denied him ability to see the provider in person, and denied him medical attention.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate

13

> indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

The Fifth Circuit issued a published opinion, affirming this Court's granting of summary judgment in a separate case in favor of defendants within regard to a plaintiff's claim of medical deliberate indifference. *See Petzold v. Rostollan*, 946 F.3d 242 (5th Cir. 2019). Petzold, a diabetic federal prisoner, injured his ankle while exercising. *Id*. at 245. The Fifth Circuit outlined the pertinent facts as follows, with footnotes to citations omitted:

> One Friday in October 2013, Petzold injured his ankle. He quickly iced it, but it swelled, and the pain became "excruciating." On his walk to the daily insulin-dispensing line, Petzold told a correctional officer about his injury. Petzold also claims that Mike Rostollan, a prison nurse, passed Petzold in the hallway and commented on his limp.
>
> Petzold waited in line for insulin. When it was his turn, he asked Rostollan, the dispensing nurse, to evaluate his ankle and render aid after the insulin line concluded. Rostollan, without looking at Petzold's ankle, told Petzold to "purchase some" pain medication—though the commissary was closed for the weekend—or "find some [pain medicine] on the unit," and "put some ice on it."

*Id*. at 246. A few days later, Petzold was treated by another nurse, with X-rays showing that his ankle was slightly fractured. *Id*. at 247. Petzold then filed his section 1983 complaint alleging that Defendant Rostollan acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

After explaining that the deliberate indifference standard is extremely high, the Fifth Circuit found that Defendant Rostollan's actions and statements did not constitute deliberate indifference. Specifically, the Court stated reasoned:

> As a matter of law, Rostollan's instruction for Petzold to ice his ankle was medical treatment. It was medical treatment because it was medical advice that Petzold could, and did, effectuate. Petzold argues that the prescribed "treatment" was not based on an evaluation, lacked specific instructions, and was ineffective. But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied. Under governing precedent, imperfect treatment does not equal denied treatment. And a disagreement with recommended treatment is generally insufficient to show deliberate indifference.

*Petzold*, 946 F.3d at 250-51. The Fifth Circuit found that this Court properly granted summary judgment.

Here, the undisputed summary judgment evidence reveals that Defendants did not act with deliberate indifference to Muckleroy's serious medical needs. Muckleroy claims that he was denied medical attention for his shoulder, but the record shows otherwise. When he was booked in the Panola County Jail on March 5, 2022, jail officials performed three medical screenings wherein Muckleroy failed to report any injury to his shoulder. Muckleroy submitted a sick-call request to Jail officials on March 8, 2022. He complained about a possible broken arm along with cuts and scratches. Dearman treated him by cleaning his knees and providing him Tylenol and Biofreeze for pain his shoulder, in which she noted a muscle-tissue knot. She discussed an X-ray with Muckleroy—and the record reflects one was ordered.

15

The same-day results of Muckleroy's X-rays of his left shoulder showed "there is moderate glenohumeral degeneration. Irregularity of the inferior glenoid may be secondary to chronic fracture/bony Bankart lesion. Otherwise no acute fracture identified. There is mild AC arthropathy. Mineralization is within normal limits." *Id*. Eastwood described the findings of Muckleroy's shoulder as chronic medical conditions, with no acute fractures identified, (Dkt. #26, pg. 31). He also explained that a "Bankart Lesion is a tear on the front part of the shoulder caused by repeated dislocations of the shoulder joints," and that surgery to repair this tear is considered an elective procedure. *Id*.

Here, as in *Petzold*, Muckleroy was provided medical care and treatment. The undisputed summary judgment does not support his claim that he did not receive medical attention or treatment; conversely, the evidence reveals that Muckleroy was medically screened immediately upon intake and when he submitted a sick-call request, he was evaluated and treated on the same day. The undisputed evidence does not show that Defendants refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for his shoulder. *Domino*, 239 F.3d at 756.

Moreover, after the X-rays were taken, Muckleroy continue to receive pain medication for his shoulder. While he subsequently refused to take his Meloxicam for pain and asked that it be "discontinued," jail officials nonetheless provided him medication for his shoulder pain. *Ganger v. Tangipahoa Parish Jail*, 554 F. App'x 271, 272 (5th Cir. 2014) (Mem.) (unpublished) ("The fact that he may be disappointed with the treatment he received or that he received unsuccessful treatment is insufficient to establish a constitutional violation.").

With respect to Muckleroy's claims he was not afforded an opportunity to see a medical provider "in person," the undisputed evidence illustrates that he was nonetheless treated and

16

evaluated by a medical provider. He points to no legal authority suggesting that he has a constitutional right to see a medical provider in person. Rather, Muckleroy's mere disagreement with the type or course of treatment does not constitute deliberate indifference. *See Gobert*, 463 F.3d at 346; *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) ("Blank's desire to see Dr. Sandknop more often amounts to a disagreement over his treatment, which, as discussed *supra*, does not rise to the level of deliberate indifference.").

Similarly, Muckleroy's disagreement with a decision that surgery or admittance to the emergency room was unnecessary or an elective procedure does not constitute deliberate indifference to his serious needs. His claim that Davis violated his rights because he took him to jail rather than the emergency room is without merit—as the mere fact that an arrestee says that he is sick or is dying is not, by itself, sufficient to pose a duty upon the defendant to call an ambulance absent actual awareness of facts from which the inference of substantial risk of serious harm can be drawn. *See*, *e.g.*, *Dyer v. Houston*, 964 F.3d 381 (5th Cir. 2020) (claim that paramedics should have provided additional care after observing the arrestee's head injury and drug-induced behavior was at most negligence, not deliberate indifference); *see also Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) (published) ("There is no Eighth Amendment claim just because an inmate believes that 'medical personnel should have attempted different diagnostic measures or alternative methods of treatment.'") (citing *Mayweather v. Foti*, 958 F.2d, 91, 91 (5th Cir. 1992)).

To the extent Muckleroy complains about the $10.00 copay, his claim—without more—is without merit. Jail officials are not required under the Eighth Amendment to provide cost-free medical care. *See Morris v. Livingston*, 739 F.3d 740, 746-48 (5th Cir. 2014); *see also Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012) (explaining that the "Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to

17

contribute to the cost of their care."). Because Muckleroy merely complains about the Jail charging him a $10.00 copay, without more, his claim presents no constitutional issue and should be dismissed.

**VI. Conclusion**

The undisputed summary judgment evidence, in light most favorable to Muckleroy, reveals that he failed to exhausted his administrative remedies within the Panola County Jail to completion before filing this lawsuit. Furthermore, even if the Court were to determine that Muckleroy exhausted his remedies, the undisputed evidence shows that Defendants did not act with deliberate indifference to his serious medical needs. Medical personnel treated his injury, provided pain medication, ordered and performed X-rays, and explained the results to him. His disagreement with medical findings, the course, or type of treatment provided does not constitute an Eighth Amendment violation.

RECOMMENDATION

Accordingly, it is recommended that Defendants', with the exception of Defendant Davis, motions for summary judgment on the failure to exhaust administrative remedies, (Dkt. ## 26, 27), be granted. The Court further recommends that Defendants' motions for summary judgment, (Dkt. ## 29, 32), be granted and that this case be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to

factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 12th day of January, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE